

Exhibit A



## VA FIXED RATE NOTE

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.



Springvale, ME                                                   City, State
February 2, 2006                                                    Date
33 Berwick Rd, Sanford, ME  04073                     Property Address

**1.  BORROWER'S PROMISE TO PAY**
      In return for a loan that I have received, I promise to pay U.S. $ 182,700.00

(this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is
Mortgage Research Center, Llc.
a  corporation                            organized and existing under the laws of Missouri
I will make all payments under this Note in the form of cash, check or money order.  I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."   .

**2.  INTEREST**
      Interest will be charged on unpaid principal until the full amount of principal has been paid.  I will pay interest at a yearly rate of 6.250                                                              %. .
        The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.  PAYMENTS**
    **(A) Time and Place of Payments**
      I will pay principal and interest by making payments every month.
      I will make my monthly payments on the first day of each month beginning on April 1st, 2006                     .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on March 1, 2036                          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
      I will make my monthly payments at Mortgage Research Center, Llc.
2101 Chapel Plaza Ct  Ste. 107, Columbia, MO  65202
    or at a different place if required by the Note Holder.
    **(B) Amount of Monthly Payments**
      My monthly payment will be in the amount of U.S.$ 1,124.92

**4.  BORROWER'S RIGHT TO PREPAY**
      The Borrower shall have the right to prepay at any time, without premium or fee, the entire indebtedness or any part thereof not less than the amount of one installment, or $100, whichever is less.  Any Prepayment in full of the indebtedness shall be credited on the date received, and no interest may be charged thereafter.  Any partial Prepayment made on other than an installment due date need not be credited until the next following installment due date or 30 days after such Prepayment, whichever is earlier.

**5.  LOAN CHARGES**
      If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.  BORROWER'S FAILURE TO PAY AS REQUIRED**
    **(A) Late Charge for Overdue Payments**
      If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be 4.000                                         %
of my overdue monthly installment, which includes principal, interest, taxes, and insurance, as allowed by state law.  I will pay this late charge promptly but only once on each late payment.
    **(B) Default**
      If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
    **(C) Notice of Default**
      If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

VA MULTISTATE FIXED RATE NOTE
C-7400 Page 1 of 2 (9/03)  (replaces 1/01)



**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  ALLONGE TO THIS NOTE**
If an allonge providing for payment adjustments or for any other supplemental information is executed by the Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box)

☐ Graduated Payment Allonge      ☐ Other (Specify)

**11.  UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Regulations (38 C.F.R. Part 36) issued under the Department of Veteran's Affairs ("VA") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

WITNESS THE HAND(S) and SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
-Borrower

_____ (Seal) Michael S. Pender
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

WITNESS

Pay to the Order of JPMorgan Chase Bank, N.A. Without Recourse JPMorgan Chase Bank, N.A Attorney in fact for Mortgage Research Center, llc by Yolanda Bradshaw/Its Authorized Assistant Secretary

Pay to the Order of: Without Recourse JPMorgan Chase Bank, N.A BY YOLANDA BRADSHAW/ASSISTANT SECRETARY

VA MULTISTATE FIXED RATE NOTE
C-7400 Page 2 of 2 (9/03)  (replaces 1/01)



## CHASE

### CORRESPONDENT ORIGINATION AND SALES AGREEMENT
#### Closed Loan Purchases

This Origination and Sales Agreement ("Agreement") is made as of the Effective Date, as defined below, by and between JPMorgan Chase Bank, National Association, ("Chase"), a national banking association organized under the laws of the United States with an office located at 10151 Deerwood Park, Building 300, 1st Floor, Jacksonville, Florida 32256, its successors and assigns, and _Mortgage Research Center LLC_ a _____ ("Correspondent"), whose principal office is located at _2101 Chapel Plaza Court, Suite 107, Columbia, MO 65203_.

### BACKGROUND

This Agreement governs the origination, sale, and transfer of certain residential Mortgage Loans including the transfer of Servicing Rights.  From time to time, Correspondent may offer to sell and Chase may agree to buy Mortgage Loans which meet Chase requirements in accordance with the terms set forth herein.

In consideration of the mutual promises, covenants, and agreements contained herein, the parties agree as follows:

### ARTICLE I
#### Definitions

1.      As used in this Agreement, all capitalized terms used in this Agreement that are not otherwise defined herein shall have the same meanings assigned to them in the Chase Correspondent Lending Guide, unless the context requires otherwise:

**"Agreement"**:        This Correspondent Origination and Sales Agreement, any and all riders, amendments or addenda hereto and the Chase Correspondent Lending Guide

**"Applicable Law"**:  All federal, state and local laws, rules, regulations and regulatory guidance, as amended from time to time, applicable to the Mortgage Loans, the Servicing Rights, and the parties' duties hereunder, including but not limited to, the Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA") (including the provisions set forth in the regulations enacted under the Cranston-Gonzalez National Affordable Housing Act), the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Flood Disaster Protection Act and all other applicable laws relative to escrow administration, usury, due on sale and loan servicing.

**"Chase Correspondent Lending Guide" or "Guide"**: The written information, instructions, terms and conditions provided or otherwise made available to Correspondent by Chase which supplements the terms and conditions of the OSA and which is incorporated into the OSA, which guide may be amended or revised by Chase from time to time in its sole discretion, including via notices or bulletins issued by Chase, which shall become part of such guide.

**"Investor Rights"**:  Any and all rights and privileges associated with the ownership of a Mortgage Loan, including but not limited to the right to receive all payments of principal and interest paid by a Mortgagor.

**"Purchasable Loan(s)"**: A Mortgage Loan which meets all the requirements for purchase set forth in the Chase Correspondent Lending Guide, the Correspondent Origination and Sales Agreement, including any and all addenda and/or riders thereto, and that has been approved for purchase by Chase.

**"Purchase Date" or "Funding Date"**:  The date when the Purchase Price is paid by Chase (without regard to any funds held by Chase for any reason); the date on which all ownership rights, title and interest in the applicable Mortgage Loans are transferred from Correspondent to Chase.

**"Purchase Price"**:  The related Purchase Price Percentage multiplied by the unpaid principal balance of the Mortgage Loan as of the related Purchase Date, plus any SRP for such Mortgage Loan pursuant to Section 3.3 of this Agreement.

**"Purchase Price Percentage"**:  The price paid by Chase pursuant to the terms of the related Commitment, and expressed as a percentage of the unpaid principal balance as of the related Purchase Date.

## ARTICLE II
## SUBMISSION AND APPROVAL; INCORPORATION OF CHASE CORRESPONDENT LENDING GUIDE





## ARTICLE III
### DELIVERY AND PAYMENT





**ARTICLE IV**
**REPRESENTATIONS, WARRANTIES AND**
**COVENANTS OF CORRESPONDENT**







## ARTICLE V
### Remedies/Repurchase/Indemnification.







**ARTICLE VI**
**Termination of this Agreement**





**ARTICLE VII**
Miscellaneous Provisions



**Section 7.8    Governing Law.** This Agreement and the interpretation of its terms shall be governed by the laws of the State of New York without giving effect to its principles of conflicts of law. THE PARTIES WAIVE THEIR RIGHTS TO A JURY TRIAL IN ANY ACTION UNDER THIS AGREEMENT.

**Section 7.10    Limited Power of Attorney.** Correspondent irrevocably appoints Chase as its attorney-in-fact for the limited purpose of permitting Chase to: (a) endorse, on behalf of Correspondent, any check, draft or other instrument in its possession which is made payable to Correspondent but which is due to Chase under the terms of this Agreement, and (b) prepare, execute and/or endorse Mortgage Notes, Assignments of Mortgages, satisfactions or releases or such other documentation as may be necessary to affect the conveyance or transfer of the Mortgage Loans to Chase or the transactions contemplated herein and hereby. Correspondent further agrees to execute any such reasonable documentation requested by Chase, including, without limitation, a reasonable separate power of attorney, in such amounts and in such form as provided by Chase.





[SIGNATURE PAGE TO FOLLOW]

   **IN WITNESS WHEREOF,** Chase and the Correspondent have caused this Correspondent Origination and Sales Agreement to be executed and effective as of the date this document is executed by Chase as set forth below (the "Effective Date"). One or more of the parties may execute this Origination and Sales Agreement by executing a separate document containing such parties' acknowledgement that execution of such document constitutes execution of this Agreement. In such event, the effective date of this Agreement shall be the effective date of such separate document.

                    JPMorgan Chase Bank, N.A.

                    By:    _Catrice Fuller_ (signature)

                    Title:  _AVP_

                    Date:  _4-28-09_


            **CORRESPONDENT**

            _Mortgage Research Center, LLC_
                         [Name of Business]

            By:  _Brock Bukowsky_
                         [Name]

                 _(signature)_
                         [Signature]

                 Title:  _Managing Member_

**FORM OF BUSINESS ORGANIZATION** [Circle One) (Corporation, Partnership, Proprietorship] (LLC)